[No. B132007. Second Dist., Div. Three. July 25, 2000.]

LOUISE GARDENS OF ENCINO HOMEOWNERS' ASSOCIATION, INC., Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE, INC., Defendant and Appellant.

650

COUNSEL

Wolf, Rifkin & Shapiro, Marc E. Rohatiner and Whitney B. Wilds for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone and Allen L. Michel for Defendant and Appellant.

## OPINION

**CROSKEY, J.**—In a case which can only be described as procedurally unusual, the appellant, Louise Gardens of Encino Homeowners' Association, Inc., a California corporation (hereafter the Association) appeals from a judgment entered upon an order confirming an arbitration award, which confirmation had been requested by the Association.

The respondent, Truck Insurance Exchange, Inc. (Truck), has cross-appealed on the ground that the trial court's confirmation order erroneously failed to explicitly declare that the Association had no legal basis to attack the arbitration award which was the subject of the confirmation proceedings.

As we explain, the undisputed record reflects that the Association received and accepted the benefits of the underlying arbitration award, failed to file any petition to vacate or correct that award, and then petitioned to confirm it. Given those circumstances, we conclude that the Association may not now attack the award. With respect to Truck's cross-appeal, the record reflects that there is still pending in the trial court a declaratory relief action filed by Truck which will resolve all of the issues between the parties not disposed of by our holding in this matter. Therefore, we will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 30, 1993, Truck renewed a policy of insurance covering the Association's 30-unit condominium. That policy covered certain damage which resulted about 45 days later in the Northridge earthquake of January 17, 1994. The Association made a claim under the policy and, as might have been anticipated, a dispute arose between Truck and the Association as to the correct amount of the loss.

Truck, based on its investigation, calculated the loss at $1,413,757.83 without regard to certain deductibles and adjustments called for under the policy. In December of 1995, Truck tendered the net amount due under its loss calculation. The Association, however, evaluated its loss in excess of

---

[1]The facts which we recite are not disputed by the parties and are established by the pleadings and documents included in the record on appeal. We are presented only with issues of law.

$2.5 million. Given this substantial difference of over $1 million, the Association demanded an appraisal. Under standard policy provisions required by Insurance Code section 2071,[2] when there is a disagreement between the insurer and the insured as to the amount of the loss, then either party may demand an appraisal. Once that demand has been made, then each party shall select a "competent and disinterested *appraiser*" and then they shall select a "competent and disinterested *umpire*." The appraisers shall appraise the loss. If they cannot agree, then they will submit their differences to the umpire. An award agreed to by any two of the three "shall determine" the amount of the loss. This procedure is mandated by the statute. Truck's policy contained such a provision although with slightly different wording.[3]

Following the Association's demand, Truck designated one Louis Heilbron as its appraiser. As required, he made certain disclosures about his prior associations and activities with the Farmers Insurance Group (of which Truck is a part). The record reflects that during the three years immediately preceding his appointment by Truck, Heilbron had served as an appraiser designated by the Farmers Insurance Group on 15 occasions, 11 of which involved appraisals which were then still pending. In addition, he had served four times during the same period as a consultant to the law firm which was then representing Truck and is currently its counsel in these proceedings.

Based on such disclosures, the Association demanded that Heilbron be replaced as Truck's designated appraiser. This demand was rejected and, on

[2]Since its enactment in 1949, Insurance Code section 2071 has directed that the standard form for fire insurance policies include a specific appraisal provision to settle disagreements concerning the amount of the claimed loss. That provision is set forth in the statute: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a *competent and disinterested appraiser* and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a *competent and disinterested* umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss [as] to each item; and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. . . ." (Ins. Code, § 2071, italics added.)

[3]Truck's policy contained the following appraisal provision: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and *impartial* appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim." (Italics added.)

August 9, 1996, the Association filed a petition for removal of appraiser (*In re Appraisal, etc.* (Super. Ct. L.A. County, 1996, No. BS040723)). Claiming that Heilbron's disclosures demonstrated that he was not a "disinterested" party, the Association asked the court to disqualify him from serving as Truck's designated appraiser.

Truck responded to this petition by noting that appraisers empowered to determine the value of a loss under a fire policy are treated as arbitrators within the meaning of Code of Civil Procedure section 1280 et seq.[4] (See *Klubnikin v. California Fair Plan Assn.* (1978) 84 Cal.App.3d 393, 398 [148 Cal.Rptr. 563].) It then argued that while section 1281.9, subdivision (c)(1), provided the method for disqualifying a *neutral* arbitrator,[5] Heilbron had not been appointed as the *neutral umpire*, but rather had been designated as a *party's appraiser*. Therefore, it was former section 1282, subdivision (e), which provided the remedy.[6]

That section limited disqualification of an arbitrator to those grounds set out in section 170.1, which is applicable to disqualification of judges. Truck argued that the past and then current association between Truck and Heilbron did not warrant his disqualification and removal under the standards set out in section 170.1.

The trial judge agreed and, on September 9, 1996, denied the Association's petition and ordered both parties to choose a neutral umpire no later than September 20, 1996.[7] This was done and, as we discuss below, the appraisal process went forward. The Association did not further pursue this

[4]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[5]Section 1281.9, subdivision (c)(1) provides: "(c)(1) If the proposed *neutral* arbitrator complies with subdivision (a) [which spells out the requirements and procedures for disclosure by a *neutral* arbitrator], the proposed *neutral* arbitrator shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification, within 15 calendar days after service of the disclosure statement." (Italics added.)

[6]Former section 1282, subdivision (e), then provided, in relevant part: "An arbitrator shall disqualify himself or herself, upon demand of any party to the arbitration agreement made before the conclusion of the arbitration proceedings, on any of the grounds specified in Section 170.1 for disqualification of a judge."

In 1997, the Legislature amended section 1281.9 to add a subdivision (e) which replaced subdivision (e) of section 1282 and now provides: "(e) An arbitrator shall disclose to all parties the existence of any grounds specified in Section 170.1 for disqualification of a judge; and, if any such ground exists, shall disqualify himself or herself upon demand of any party made before the conclusion of the arbitration proceeding. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or their respective representatives."

[7]In announcing its decision, the trial court emphasized that Heilbron had never served as an advocate or expert witness on behalf of the Farmers Insurance Group and that no evidence of

special proceeding (i.e., *In re Appraisal, etc., supra*, No. BS040723). It did not appeal the trial court's decision nor did it seek writ relief.

Thereafter, Truck made demands under the policy for the Association (1) to make its representatives available for examination under oath to discuss matters related to the claimed loss and (2) to produce for inspection, examination and audit the Association's books and records. Claiming that the Association had failed to comply with such requests, and had even instructed its project engineer not to discuss with Truck relevant information regarding repairs to the damaged property, Truck asserted that the "cooperation" clauses of the policy had been violated. On August 1, 1997, Truck filed an action against Association for declaratory relief (*Truck Ins. Exchange, Inc. v. Louise Gardens of Encino Homeowner's Assn., Inc.* (Super. Ct. L.A. County, 1997, No. BC175693); hereafter the declaratory relief action). Truck sought in that action a judgment declaring that the Association's breach of the cooperation provisions of the policy estopped it from any right to obtain an appraisal of its claimed earthquake loss, and that the policy was voidable, thus releasing Truck from any obligation to pay any benefits at all. That action is still pending in the trial court, but has been stayed pending resolution of the issues raised in this appeal.[8]

In the meantime, the appraisal of the loss which the Association had requested went forward and, on November 10, 1997, the appraisal panel issued an "Appraisal of Insurance Loss Award" in the sum of $1,760,215.79 "without consideration of or reduction in value for deductible amounts, amounts paid or other provisions of the . . . Policy of Insurance which might affect the amount of the insurer's liability thereunder."[9] On January 20, 1998, Truck paid to the Association the sum of $440,000 which represented the difference between the appraisal award and the amount previously paid by Truck.[10]

Although this appeal necessarily reflects that the Association is decidedly unhappy with the outcome of the appraisal, the record demonstrates that it

actual bias was presented; prior service as a party designated appraiser was not, in and of itself, enough to warrant disqualification.

[8]On October 23, 1998, Truck moved for summary adjudication in the declaratory relief action that the Association had breached it duties to Truck under the policy thereby rendering it voidable and excusing counterperformance. This motion was denied and Truck thereafter petitioned us for a writ of mandate. We summarily denied that petition on June 23, 1999 (*Truck Ins. Exchange, Inc. v. Louise Gardens of Encino Homeowner's Assn., Inc.* (June 23, 1999, B132128) [nonpub. opn.]).

[9]The award was signed by Truck's designated appraiser, Louis Heilbron, and the neutral umpire, the Honorable Alfred L. Margolis.

[10]Truck states in its brief that such payment was made "subject to [Truck's] rights in the already pending declaratory relief case." However, we are not provided with any record citation reflecting such a reservation. In any event, the legal implications of such payment and

did not at any time move to vacate the award, much less do so within the 100-day period specified in section 1288.[11] Instead, on December 16, 1997, the Association filed a cross-complaint against Truck in the declaratory relief action for breach of contract and breach of the implied covenant of good faith. By that pleading, it sought to *enforce* the appraisal award. Among the damages which the Association sought to recover was the allegedly unpaid sum of $360,000 which, the cross-complaint alleged, was the amount then due, *"as established by the appraisal."* While it also sought other relief as well, and alleged that Truck acted in bad faith in its handling of this claim, it is clear that the cross-complaint sought to recover on the appraisal award.

Finally, on January 15, 1999, over 14 months after its receipt of the appraisal award, the Association filed the petition (No. B5055258) which has led to this appeal.[12] On that date, it filed a "Petition to Confirm Appraisal Award and Request for Entry of Judgment." Although the Association had received and accepted full payment of the amount of the award approximately a year earlier and, as discussed above, had filed a cross-complaint seeking to enforce the award, it now alleged in its petition to confirm that it sought to convert the appraisal award into a judgment from which it could then take an appeal from the trial court's ruling on September 9, 1996, in *In re Appraisal, etc., supra,* No. BS040723, denying the Association's petition to remove Truck's designated appraiser.[13]

Truck opposed this petition on the grounds that it was sought for the improper purpose of attacking the very award the Association sought to

the asserted reservation may be matters for consideration by the trial court in the declaratory relief action.

[11]Section 1288 provides: "A petition to confirm an award shall be served and filed not later than four years after the date of service of a signed copy of the award on the petitioner. A petition to vacate an award or to correct an award *shall be served and filed not later than 100 days* after the date of the service of a signed copy of the award on the petitioner." (Italics added.)

[12]It should be noted that this trial court case number is different than the one assigned to the Association's removal petition (*In re Appraisal, etc., supra,* No. BS040723) which had been filed on August 9, 1996, and denied on September 9, 1996, and from which no appeal was taken or writ presented.

[13]In the final paragraph of this petition, the Association alleges: *"Respondent has already paid Petitioner the full amount of the Award.* Petitioner is informed and believes, and thereon alleges, that the amount awarded represents only a portion of what Petitioner was entitled to and that had the Petition to Disqualify been granted and had Respondent appointed a disinterested appraiser, *Petitioner would have received substantially more than what was* awarded. Ultimately, to the extent the appeal is successful and if required to do so, Petitioner will return to Respondent any amounts paid by Respondent as a result of the Award which Respondent claims Petitioner is not entitled to." (Italics added.)

confirm. The trial court, however, found no basis to deny the petition[14] and, on April 7, 1999, granted it. On April 30, 1999, a judgment was entered by the court which provided that "the award dated November 10, 1997, signed by the appraiser, Louis Heilbron, and the umpire, Hon. Alfred L. Margolis is confirmed in all respects. *This is not a money judgment and only confirms the matters determined by the appraisal*." (Italics added.)

The Association filed a timely appeal and Truck filed a timely cross-appeal.

### CONTENTIONS OF THE PARTIES

Each of the parties makes a number of arguments, but we need only consider those which are immediately dispositive of this appeal. The Association contends that it may, by this appeal, attack the trial court's ruling, in a different special proceeding, which denied the Association's petition to remove Truck's designated appraiser. It contends that such denial was merely an intermediate nonappealable ruling which may be reviewed on an appeal taken after a judgment has been entered on a confirmation order.

Truck responds that the Association's failure to file a petition to vacate the award as well as its subsequent acceptance of the award and cross-complaint seeking to enforce it, preclude it from now attacking the award; furthermore, as the award was properly confirmed, the judgment thereafter entered on that confirmation must be affirmed.

By its cross-appeal Truck raises two principal arguments. First, it argues that the judgment of confirmation should have been more explicit about its scope and effect. Truck contends that the judgment should have made clear that (1) the Association is not entitled to another appraisal, (2) the Association failed to timely seek vacation of the first award and (3) the trial court

---

[14]The trial court noted that section 1286 (see fn. 16, *post*) appeared to compel an order of confirmation as "no one is arguing the award should be vacated or corrected." The court also expressed some frustration with the arguments presented by counsel: "The Court: Look, this is so simple to me, and you both are making it so complicated. If somebody comes in and there is an award, and there is nothing wrong with the award, why shouldn't the court confirm the award? [¶] The court should confirm the award even if it has been paid, because there might be collateral consequences to that down the road. What the court is saying is okay, they have made an award. I confirm the award. That is the amount. [¶] In this case it is just an appraisal amount. It is not a judgment to pay an amount. But nobody in the future — what I am saying when I am confirming the award is nobody in the future can contest this is the amount [¶] It is blessed by the court. That part of it is done. That is it. That is all. But frankly, to think that one can petition to confirm an award and then appeal as aggrieved from the confirmation of the award, is very unusual to me. I will just leave it at that. [¶] And I am just doing what CCP 1286 says. It is very simple, it is very straightforward."

did not err when it denied the petition to remove Truck's appraiser. In other words, the judgment should have expressly stated that the Association was judicially bound by the award as an upper limit of its claimed loss.

The second argument which appears to be advanced by Truck seems to be that the judgment erroneously failed to hold that the Association had breached the policy's cooperation clauses and that Truck was thereby excused from any performance under the policy; that is, Truck is entitled to reclaim all of the money it has paid under the policy.

As we explain, our resolution of the Association's appeal will effectively deal with Truck's first argument on its cross-appeal. As to its second argument, those are issues which are now before the trial court in the declaratory relief action and must be initially dealt with in that proceeding.

DISCUSSION

1. *Standard of Review*

■ Both parties agree that only legal issues are presented by this appeal and they primarily involve the interpretation of relevant statutes. Thus, the applicable standard of review is de novo. (*Kurtz v. Calvo* (1999) 75 Cal.App.4th 191, 193 [89 Cal.Rptr.2d 99].) In that regard, well-settled principles govern us.

■ The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (§ 1859; *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) The words of a statute ordinarily provide the most reliable indication of legislative intent. (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1153 [69 Cal.Rptr.2d 329, 947 P.2d 291].) If there is no ambiguity in the language of a statute, we presume the Legislature meant what it said and the plain meaning governs. (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].) When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates that the Legislature intended to convey a different meaning. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-622 [59 Cal.Rptr.2d 356, 927 P.2d 713]; *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1504 [82 Cal.Rptr.2d 368].) A court cannot insert or omit words to cause the meaning of a statute to conform to a presumed intent that is not expressed. (§ 1858; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

### 2. *Statutory Rules for Arbitrations Preclude the Association's Attack on the Appraisal Award*

■ An agreement to conduct an appraisal contained in a policy of insurance constitutes an "agreement" within the meaning of section 1280, subdivision (a),[15] and therefore is considered to be an arbitration agreement subject to the statutory contractual arbitration law. (*Appalachian Insurance Co. v. Rivcom Corp.* (1982) 130 Cal.App.3d 818, 824 [182 Cal.Rptr. 11].) Those statutory provisions represent a comprehensive statutory scheme for the arbitration of disputes. As such, the Legislature's use of the word "shall" in the statutory provisions which we now discuss makes them mandatory, not precatory. (*Cole v. Antelope Valley Union High School Dist.* (1996) 47 Cal.App.4th 1505, 1511-1513 [55 Cal.Rptr.2d 443].) As a result, they are dispositive of the arguments advanced by the Association.

It is clear from the Association's brief that it seeks to avoid the result of the appraisal which established the actual amount of its loss from the Northridge earthquake. That award was issued on November 10, 1997. The Association's options upon such issuance are set out in the arbitration statutes. A party to an arbitration may seek to vacate or correct the award or to have it confirmed. (§ 1285.) Upon a petition seeking any of those results, the court *must confirm* the award, *unless* it either vacates or corrects it. (§ 1286.)[16]

One of the recognized grounds for the vacation of the appraisal award is the failure of an arbitrator who was subject to disqualification upon the grounds set out in former section 1282, subdivision (e) (now § 1281.9, subd. (e)) to disqualify himself or herself as required by the statute. (§ 1286.2, subd. (f).) However, such relief must be sought in a timely manner. A court may not vacate an award unless a petition requesting such relief has been duly filed and served (§ 1286.4, subd. (a)) not later than 100 days after the date of service of a signed copy of the award upon the petitioning party. (§ 1288.)

As we have already noted, the Association did not file a petition to vacate the award at any time, much less within the mandatory 100 days, despite the

---

[15]Section 1280, subdivision (a), provides, in relevant part: " 'Agreement' [as used in this title] includes but is not limited to agreements providing for valuations, appraisals and similar proceedings . . . ."

[16]Section 1286 provides: "If a petition or response under this chapter is duly served and filed, the court *shall confirm the award* as made, whether rendered in this state or another state *unless* in accordance with this chapter *it corrects the award* and confirms it as corrected, *vacates the award* or dismisses the proceeding." (Italics added.)

fact that it apparently claimed at the time the award was made (and now contends) that Truck's designated arbitrator, Heilbron, should have disqualified himself or been disqualified by the court. However, the only action the Association ever took to raise this objection was to file a preappraisal petition (in a separately filed special proceeding) for an order removing that arbitrator. When the trial court refused to do so, the Association did not seek appellate relief. Thus, at the time of its receipt of the award, the Association clearly had knowledge of the claimed basis for the arbitrator's disqualification. Even if the Association is correct that direct appellate relief for the adverse ruling on its removal petition was not available, that would not excuse its failure to file and serve a timely motion to vacate on that ground.

Our reading of the statutory scheme which we have outlined above compels the conclusion that a party to an arbitration may not circumvent the 100-day time requirement in which to seek the vacation of an award by attempting to raise his or her objections to the award in an appeal from the judgment entered following an order of confirmation. Indeed, as we explain below, if a *timely* petition to vacate had been filed, its denial would have directly and necessarily led to entry of a confirmation order which, in turn, would have led to an appealable judgment. In that circumstance, the issues which the Association now seeks to raise could have been considered.

A party who fails to timely file a petition to vacate under section 1286 may not thereafter attack that award by other means on grounds which would have supported an order to vacate. (*Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 393-396 [279 Cal.Rptr. 124].) In *Knass*, the insured had sued his medical insurer and the matter had been submitted to binding arbitration. After the award was issued, the insured did not petition the court to vacate the award within 100 days after it was served, but later filed an appeal from the postconfirmation judgment. The court held that "Knass waived his opportunity to challenge the award by allowing the 100-day period to expire. The fact the award was reduced to a judgment does not resurrect his opportunity to challenge it." (*Id.* at p. 394.)

The *Knass* court explained its reasoning in the following terms: "In order to comply with the purpose of expeditious resolution of disputes through arbitration, time limits in which to challenge arbitration awards must be strictly enforced. [Citations.] Permitting a party to wait until after judgment to challenge an award would undermine the purpose of arbitration proceedings—to resolve disputes quickly. The requirement that a petitioner challenge an award within the 100-day limit 'places a burden upon those who would attack the award to act promptly or acquiesce in its enforcement.' [Citation.]." (*Knass v. Blue Cross of California, supra,* 228 Cal.App.3d at p. 395.)

Applying the principles of statutory construction which we have summarized above, the *Knass* court concluded: "Although section 1287.4[17] allows an appeal from a judgment confirming an arbitrator's award, we find no indication that the section contemplates allowing a party to bypass the procedures which provide for limited review by the superior court. . . . [¶] The arbitration statute is clear. A party to an arbitration proceeding must challenge an award under section 1288 by a petition to vacate or correct the award within 100 days of service of the award. An appeal of the judgment confirming the award may not be used to circumvent the prescribed time allowed to petition for vacation or correction of award." (*Knass v. Blue Cross of California, supra,* 228 Cal.App.3d at pp. 395-396; see also *Davis v. Calaway* (1975) 48 Cal.App.3d 309, 311 [121 Cal.Rptr. 570].)

Clearly, the method adopted by the Association to attack the appraisal award does not comport with the statutory scheme which has been put in place by the Legislature. As section 1286 explicitly provides, if a court does not vacate or correct an award (or dismiss the proceeding), it must confirm it. That is what happened here. Indeed, it was upon the Association's petition that such confirmation occurred. We agree with the reasoning in *Knass* and hold that the Association cannot avoid the consequences of its failure to file a timely petition to vacate by appealing from the postconfirmation judgment.

We summarily reject the Association's argument that this was the only way in which it could raise on appeal the claimed error of the trial court in denying its initial petition to remove Truck's arbitrator for failing to disqualify himself. It would not, as the Association argues, have been a useless act to file a timely petition to vacate the award. In fact, that was the *only* proper procedure to follow under the statute. While it is true that no appeal would lie until a judgment had been entered, such a judgment would have followed from a denial of the Association's petition to vacate.[18] As section 1286 plainly and expressly states, if a petition to vacate is not granted, then the court "*shall confirm the award as made.*" (Italics added.) Thus, the Association's only remedy, which it obviously chose not to adopt, was to file a timely petition to vacate the award, then appeal from the judgment entered after the order of confirmation which the court was statutorily bound to make in the event of a denial of the vacation petition.

---

[17]Section 1287.4 provides: "If an award is confirmed, judgment shall be entered in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action of the same jurisdictional classification; and it may be enforced like any other judgment of the court in which it is entered, in an action of the same jurisdictional classification."

[18]Had its petition to vacate been granted there would, of course, have been no problem as far as the Association's interests were concerned.

### 3. *The Association's Postaward Conduct Also Precludes Attack on the Appraisal Award*

█ Following issuance of the appraisal award in November of 1997, the Association not only did not follow the prescribed statutory procedures for attacking the award, but it filed an action (i.e., a cross-complaint to Truck's declaratory relief action) to enforce the award and, a month later, accepted Truck's payment of the balance due as specified by the award.

We agree with Truck that such action constituted an adoption and ratification of the appraisal award which also precludes its appeal of the judgment entered thereon. (*Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 822-824 [128 Cal.Rptr. 115].) In *Trollope,* one party accepted payment of a $128,000 interim arbitration award and later, after the amount due was reduced by the final award and was confirmed by the trial court, appealed from the resulting judgment. The court held that the principles applicable to acceptance of the benefits of a judgment and the resulting waiver of the right to appeal therefrom applied with equal force to an arbitration award. (*Id.* at p. 824.) "The theory behind the 'acceptance of benefits' rule is that if a person voluntarily acquiesces in or recognizes the validity of a judgement or decree, or otherwise takes a position inconsistent with the right of appeal therefrom, he thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court. [Citations.] Accordingly, since arbitration is for the benefit of both parties, it would be incongruous to hold that a party can accept the award and the payment thereunder and then attack the award on appeal." (*Ibid.*)

We see no reason not to apply this principle here as an additional basis for rejection of the Association's procedurally ineffective attempt to appeal from a judgment entered following the confirmation (for which the Association had petitioned) of an award made by an appraisal which the Association had itself originally demanded.

### CONCLUSION

For all of the reasons discussed above, we will reject the Association's appeal and affirm the judgment. In view of this conclusion, we have no reason to reach or discuss the Association's claimed error by the trial court in denying its original petition to remove Truck's designated appraiser. The appraisal award will thus become final and binding on both parties as a measure of the cash value of the loss sustained by the Association as a result of the Northridge earthquake. We believe this result necessarily disposes of Truck's first contention with respect to its cross-appeal so we have no occasion to further address that issue.

With respect to Truck's second contention raised under its cross-appeal, it is not appropriate for us to go beyond what we have already stated and held. There are a number of issues raised by Truck's pending declaratory relief action which, upon our issuance of a remitittur in this matter, will go forward and be tried. We believe that our decision in this appeal can and should address only the finality and enforceability of the appraisal award. That issue is now put to rest. We need not and do not go beyond that issue. The remaining issues between the parties must be resolved by the trial court in the declaratory relief action.

## DISPOSITION

The judgment is affirmed. Truck shall recover its costs on appeal.

Klein. P. J., and Aldrich, J., concurred.